**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| JENNIFER MOSCHETTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:23-cv-389–HEH |
| | ) |
| NIXON PEABODY, LLP, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
### (Granting Defendant's Motion to Dismiss)

THIS MATTER is before the Court on Defendant Nixon Peabody, LLC's

("Defendant") Motion to Dismiss (the "Motion," ECF No. 10), filed on July 21, 2023.

Defendant moves to dismiss Plaintiff Jennifer Moschetti's ("Plaintiff" or "Moschetti")

Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot.

at 1.)  The parties have filed memoranda supporting their respective positions, and the

Court heard oral argument on November 3, 2023.  At the hearing, the Court granted

Defendant's Motion for the reasons articulated below.  (Minute Entry at 1, ECF No. 20.)

## I. BACKGROUND

Moschetti worked as an investigator for the Office of the State Inspector General

("OSIG") from January 2020 through March 22, 2021.  (Compl. ¶ 14.)  On May 4, 2020,

Michael Westfall ("Westfall"), the State Inspector General, assigned Moschetti to

investigate multiple complaints of fraud and abuse involving the Virginia Parole Board

(the "Board").  (*Id.* ¶¶ 10, 16.)  Moschetti asserts she faithfully investigated the

allegations and received praise for the quality of her work. (*Id.* ¶¶ 15, 17.) She found

numerous violations of policy and law by Board members relating to granting parole for

offenders. (*Id.* ¶ 19.) Her report specifically detailed violations committed by the Board

when granting the parole of offender "VLM." (*Id.* ¶ 20.) Westfall certified Moschetti's

findings as "substantiated." (*Id.* ¶¶ 19–20.)

Moschetti's report on offender VLM was leaked to the public, prompting

numerous news stories. (*Id.* ¶ 27.) She and Westfall were interrogated by members of

Governor Ralph Northam's ("Governor Northam") administration about the leak. (*Id.*

¶ 28.) During the interrogation, Moschetti's objectivity and bias were called into

question. (*Id.* ¶ 32.) The members not only questioned Moschetti's findings, but also

questioned the choice to investigate the Board and to document the findings in a report.

(*Id.* ¶ 34.)

Moschetti asserts that this meeting was intended to intimidate, and did intimidate,

herself, Westfall, and OSIG investigators. (*Id.* ¶ 37.) Westfall told Moschetti that he

may lose his job because of the VLM report, and this caused Moschetti to fear losing her

job as well. (*Id.* ¶ 38.) On June 15, 2020, the VLM report was sanitized and shortened as

a result of conversations between OSIG and its Agency representative from the Office of

the Attorney General ("OAG"). (*Id.* ¶ 40.) The updated report no longer included

Moschetti's discussion of potential criminal wrongdoing by the Board, and details of the

decision to parole VLM. (*Id.* ¶ 41.) This caused Moschetti to believe the government

was trying to cover up the seriousness of the allegations against the Board and that

further improper conduct occurred through the sanitization and shortening of her report. (*Id.* ¶¶ 42–43.) Because of her apprehensions, Moschetti decided to speak out. (*Id.* ¶ 44.) She spoke with a former law enforcement officer about the VLM report, provided the report to an active law enforcement officer for the City of Richmond, and shared some of the information with the FBI. (*Id.* ¶¶ 44–47.) Moschetti also expressed concern for her safety, her job, and suspected a cover up by OSIG and/or the Governor's Office. (*Id.*)

In February 2021, Moschetti's full VLM report was leaked to the media. (*Id.* ¶ 48.) The Virginia State Police conducted an investigation into the leak, and Moschetti feared she would be used as a scapegoat for the leak. (*Id.* ¶¶ 52–54.) On March 3, 2021, Moschetti released a partial copy of her file, including the full reports on the paroled offenders, to the General Assembly as an alleged Whistleblower. (*Id.* ¶ 55.) On March 5, 2021, Moschetti was placed on pre-disciplinary leave with pay, pending an investigation. (*Id.* ¶ 56.) Moschetti demanded the retraction of her leave due to her alleged Whistleblower status and filed a petition in the City of Richmond Circuit Court (the "Circuit Court") asking the court to declare her a Whistleblower under the Virginia Whistleblower Protection Act and to award her various forms of relief. (*Id.* ¶¶ 57–58.) Moschetti was fired by OSIG on March 22, 2021. (*Id.* ¶ 59.)

Plaintiff asserts she became "Public Enemy Number 1" because of her whistleblowing activities. (*Id.* ¶ 60.) Clark Mercer ("Mercer"), Chief of Staff for Governor Northam, and Brian Moran ("Moran"), Secretary of Public Safety and Homeland Security, publicly stated that Moschetti's report was biased and lacked

3

objectivity and attempted to minimize her petition to the Circuit Court. (*Id.* ¶¶ 11–12,

61–64.) On April 7, 2021, the Virginia General Assembly ("General Assembly") passed

a bill, H.B. 1800, that required "an independent, third-party investigation of the [OSIG's]

policies, process, and procedures employed during its investigation of the [Board's]

handling of the [VLM] matter." (*Id.* ¶ 73.) Defendant was hired as the investigator,

completed extensive witness interviews, and reviewed over 8,500 documents. (*Id.* ¶ 79.)

Defendant released its report to the Governor and the General Assembly on or about

June 14, 2021, and found that Moschetti engaged in improper conduct and that she was

biased and lacked objectivity. (*Id.* ¶¶ 75, 77; Mem. in Supp. at 10, ECF No. 11.) The

Governor's Office later published Defendant's report. (Mem. in Supp. at 10.)

On January 25, 2023, the OAG, under Governor Glenn Youngkin, issued a report

finding that Defendant's conclusions were "unsupported by the evidence" and that

Defendant "omitted significant material information from its final report." (Compl.

¶¶ 88–89.) The OAG further noted that the witnesses interviewed by Defendant found

Moschetti was "unbiased and professional." (*Id.* ¶ 90.) Moschetti asserts that

Defendant's report substantially harmed her reputation and her ability to obtain

employment. (*Id.* ¶ 95.)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of

a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir.

2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992))

(internal quotations omitted). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387) (alteration in original). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).

A court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Count I – Defamation

#### 1. Count I is barred by the statute of limitations.

Defendant asserts that Count I is barred by the statute of limitations because Plaintiff did not file her Complaint within one (1) year of Defendant's report. (Mem. in

Supp. at 4–6.) Plaintiff raises three (3) main arguments against the applicability of the statute of limitations. First, Plaintiff contends that it is improper to decide whether her defamation claim is barred by the statute of limitations at this stage, and, instead, states it "is more appropriately addressed at the summary judgment stage." (Mem. in Opp'n at 3–4, ECF No. 16.) Second, Plaintiff alleges that the statute of limitations is tolled under Virginia Code § 8.01-229(D) because Defendant either directly or indirectly obstructed the filing of her action. (*Id.* at 4–5); VA. CODE ANN. § 8.01-229(D). Third, Plaintiff argues that the statute of limitations period did not begin until she could plausibly allege all of the elements of defamation, including actual malice. (*Id.* at 9.)

"In Virginia, there is a one-year statute of limitations for defamation claims which begins to run from the date of publication." *Cox v. Red Hat, Inc.*, No. 1:23-cv-766, 2024 WL 98162, at *4 (E.D. Va. Jan. 9, 2024) (internal citations and quotations omitted); *see also* Va. Code § 8.01-247.1 ("Every action for injury resulting from libel, slander, insulting words, or defamation shall be brought within one year after the cause of action accrues.") Plaintiff's belief that the statute of limitations does not begin until she could plausibly allege all elements of a defamation claim is misguided. There is no requirement that she had to have notice of the viability of her claim; rather, the statute of limitations begins to accrue upon publication. *See, e.g., Matthews v. Gee*, No. 3:17-cv-32, 2017 WL 939323, at *4 (E.D. Va. Mar. 9, 2017) ("[A] defamation claim does not toll during a period of time that the plaintiff was unaware of the actions—or illegality of those actions—giving rise to a claim.").

6

While a district court generally cannot reach the merits of an affirmative defense, like a statute of limitations defense, at the motion to dismiss stage, the defense may be reached under a Rule 12(b)(6) motion "if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis added). Here, it is clear that Plaintiff's defamation claim is barred by the statute of limitations on the face of the Complaint. Both parties agree that Defendant published its report on June 14, 2021. (*See* Compl. ¶ 75; Mem. in Opp'n at 9 n.7; Mem. in Supp. at 5.) However, Plaintiff did not file her Complaint until June 14, 2023—two (2) years after the date of publication. Thus, Count I is barred by the statute of limitations.

Plaintiff urges the Court to find that the statute of limitations was tolled under Va. Code § 8.01-299(D) because Defendant, in its report, "made misrepresentations that were expressly designed to deter anyone . . . from peeking behind the curtain of the [r]eport about Moschetti," and, therefore, it deterred Moschetti from believing she could bring a valid and meritorious defamation claim. (Mem. in Opp'n at 5, 7–8.) The Court disagrees. Plaintiff, again, misunderstands the statute of limitations for defamation—the limitations period begins upon publication, not upon notice of a valid and meritorious defamation claim.[1] Nor does Plaintiff offer any evidence that Defendant obstructed the

---

[1] Plaintiff argues that the statute of limitations did not begin to accrue until January 25, 2023, when the OAG report put her on notice of the "viability" of her claim. (Mem. in Opp'n at 2, 7–10.) By this logic, if the OAG instead released its report in 2050, Plaintiff's defamation claim over Defendant's June 14, 2021 report would not begin to accrue until 2050—resulting in a

filing of her action; rather, she merely disagrees with the report's findings. Moreover, it

appears that no court in the Fourth Circuit has tolled the statute of limitations for a

defamation claim under § 8.01-299(D). *See, e.g., Daniels v. Georgia-Pacific Corp.*,

No. 97-2670, 1998 WL 539474, at *4 (4th Cir. Aug. 25, 1998); *Snyder v. Home Depot

U.S.A., Inc.*, No. 5:11-cv-70336 2011 WL 4903199, at *3 (W.D. Va. Oct. 14, 2011); *see

also Finnerty v. Thorton Hall, Inc.*, 593 S.E.2d 568, 574 (Va. Ct. App. 2004) ("As a

general rule, '[s]tatutes of limitations are strictly enforced and exceptions thereto are

narrowly construed. Consequently, a statute should be applied unless the General

Assembly clearly creates an exception, and any doubt must be resolved in favor of the

enforcement of the statute.'" (quoting *Arrington v. Peoples Sec. Life Ins.*, 458 S.E.2d

289, 290–91 (Va. 1995))). This case is not appropriate to be the first.

## 2. Defendant is protected by qualified privilege.

Defendant asserts that because it had a duty to issue its report pursuant to

H.B. 1800, Defendant is entitled to absolute privilege for its report, or, alternatively,

qualified privilege. (Mem. in Supp. at 6–8.) Plaintiff argues that Defendant is not

protected by either absolute or qualified privilege because the Complaint sufficiently

alleges common law malice and actual malice which defeats Defendant's asserted

---

potentially infinite statute of limitations. This cannot be true as it would render the statute of
limitations meaningless. Moreover, the statute of limitations for defamation claims runs even if
the plaintiff is entirely unaware of the defamatory statements. *See Bass v. E.I. Dupont De
Nemours & Co.*, 28 F. App'x 201, 206 (4th Cir. 2002) ("The Virginia General Assembly has
declined to adopt a discovery rule in defamation actions."); *Brown v. Am. Broad. Co.*, 704 F.2d
1296, 1299–300 (4th Cir. 1983) (finding that the plaintiff's defamation claim accrued at the time
of the broadcast, not when the plaintiff "first learned of the broadcast and became emotionally
upset and embarrassed"). Thus, Plaintiff's argument is meritless.

privilege. (Mem. in Opp'n at 12–16.)

"'[T]he maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false.'" *Isle of Wight Cnty. v. Nogiec*, 704 S.E.2d 83, 88 (Va. 2011) (quoting *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004)) (alterations in original). Statements to the legislature are only protected by absolute privilege "when the legislative body is acting in its legislative capacity—i.e., when it is creating legislation— rather than in its supervisory or administrative capacity." *Id.* at 89.

In this case, Defendant's report was not used to create legislation. Rather, the Governor's Office and General Assembly requested Defendant's report to understand the OSIG's "policies, process, and procedures" employed during Moschetti's investigation of the Parole Board's handling of the VLM matter and to review any recommendations by Defendant. (Compl. ¶ 73 (quoting H.B. 1800 (2021))); *see Isle of Wight Cnty.*, 704 S.E.2d at 90 (holding that the defendant's statements were not absolutely privileged because the County's Board of Supervisors did not use the defendant's report to create legislation). Thus, the Governor's Office and General Assembly were acting in a supervisory or administrative capacity, and Defendant's report is not entitled to absolute privilege.

The Court now turns to whether Defendant's report is protected by qualified privilege. Under Virginia law, "[c]ommunications between persons on a subject in which the persons have an interest or duty" are protected by qualified privilege. *Cashion v.*

*Smith*, 749 S.E.2d 526, 532 (Va. 2013) (quoting *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)) (alterations in original) (internal quotations omitted). "Once a qualified privilege has attached to a communication, the plaintiff has the burden to prove that the privilege has been lost or abused, which must be shown by clear and convincing proof." *Id.* at 532 (internal citations omitted). A plaintiff may prove the privilege has been lost or abused by showing that: "(1) the statements were made with knowledge that they were false or with reckless disregard for their truth; (2) the statements [we]re communicated to third parties who have no duty or interest in the subject matter; (3) the statements were motivated by personal spite or ill will; (4) the statements included strong violent language disproportionate to the occasion; or (5) the statements were not made in good faith." *Id.* at 533 (internal quotations and citations omitted) (alteration in original). This list is "non-exhaustive." *Id.* If the plaintiff proves any of these elements by clear and convincing evidence, she defeats the privilege. *Id.* (citing *Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 854 (Va. 1985)).

H.B. 1800 required Defendant disclose its findings and recommendations in a written report to the Governor and specific members of the General Assembly. (Compl. ¶ 73 ("No later than June 15, 2021, the investigator shall prepare a written report to the Governor, Speaker, Majority Leader and Minority Leader of the House of Delegates, President pro tempore, Majority Leader and Minority Leader of the Senate with the investigator's findings and any recommendations.").) Thus, Defendant had a duty to issue its report to the Governor and General Assembly, and its report is protected by

10

qualified privilege. *See Isle of Wight Cnty.*, 704 S.E.2d at 90 (finding that an assistant administrator's statements enjoyed qualified privilege because he had a duty to report to the County's Board of Supervisors).

Plaintiff cannot overcome Defendant's qualified privilege because she has failed to plausibly allege malice. Plaintiff argues that Defendant acted maliciously because its statements were made with knowledge that they were false and/or with reckless disregard for their truth. (Mem. in Opp'n at 13–14.) However, Plaintiff solely points to the OAG's January 25, 2023 report to support this argument. The OAG report was issued over eighteen (18) months *after* Defendant's report, and, thus, Plaintiff cannot show that Defendant knew its report was false or recklessly disregarded the truth based on a document that did not exist at the time of Defendant's investigation and report. (*See* Compl. ¶¶ 89–93.) Again, Plaintiff merely disagrees with Defendant's statements and agrees with the OAG's findings, which is insufficient to show malice.

Moreover, Plaintiff fails to allege that Defendant had "obvious reasons to doubt" the evidence and witnesses before it. Recklessness may be shown when there are "obvious reasons" to doubt the veracity of the evidence or basis of the statements. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 300 (4th Cir. 2008). In preparing its report, Defendant conducted "extensive witness interviews" and reviewed over 8,500 documents in preparing its report. (*Id.* ¶ 79 (citing Ex. A at 27–29, ECF No. 1-1).) Plaintiff has not demonstrated that Defendant had "obvious reasons" to doubt the truthfulness or accuracy of these witnesses, Moschetti's own emails, or the slew of other documents Defendant

11

reviewed. *See CACI Premier Tech., Inc.*, 536 F.3d at 300 (finding that the defendant did not act with actual malice because the defendant relied on multiple sources in which "[t]here [was] no evidence to suggest that these sources provided unreliable information or that [the defendant] had 'obvious reasons' to doubt what they said") (citation omitted). There is no indication that Defendant acted with malice, and, therefore, Plaintiff has not met her burden of showing that Defendant's qualified privilege is lost or abused. Thus, Count I is barred by qualified privilege.

### 3. Count I fails to state a claim upon which relief may be granted.

Defendant argues that Plaintiff has not plausibly alleged the elements of a defamation claim. (Mem. in Supp. at 9–14.) Defendant asserts that Count I fails because (1) the Governor's office, not Defendant, published its report; (2) the report is not actionable because it expresses Defendant's opinion; and (3) Defendant lacked actual malice. (*Id.* at 10–14.) Plaintiff contends that she has sufficiently alleged all the elements of defamation. (Mem. in Opp'n at 16–23.) She first argues that Defendant published the report by sending it to the leaders of the General Assembly. (*Id.* at 16–18.) Plaintiff then asserts that Defendant's report is actionable because it contains statements of provable fact. (*Id.* at 18–22.) Lastly, she asserts that the Complaint plausibly alleges actual malice because Defendant knew its statements about Moschetti were false. (*Id.* at 22–23.)

In Virginia, for a plaintiff to succeed on her defamation claim, she must show "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v.*

*Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)) (internal quotations omitted).  In this case, to prove Defendant had the requisite intent, the defamatory statements must be made with actual malice,[2] meaning with "knowledge of falsity or reckless disregard of a 'high degree of awareness of . . . probable falsity.'"  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 n.5 (4th Cir. 1993) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)).  Reckless disregard requires that the defendant "entertained serious doubts as to the truth of [its] publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  As previously explained, Plaintiff has failed to plausibly allege actual malice.  *See supra* Section III.A.2.  Thus, Plaintiff has not shown the requisite intent for defamation, and Count I fails to state a claim under Rule 12(b)(6).

Accordingly, the Court will dismiss Count I because it is barred by the statute of limitations, Defendant is protected by qualified privilege, and Count I fails under Rule 12(b)(6).[3]

## B.  Count II – Due Process Violation: Liberty Interest under 42 U.S.C. § 1983

### 1.  Defendant is not subject to suit under § 1983.

Plaintiff asserts that Defendant deprived her of her liberty interest "to engage in the commonplace occupations of her life and with respect to her good name, reputation,

---

[2] Plaintiff agrees that, at the time of Defendant's report, "she was, at least, a limited-purpose public figure," and, therefore, must show actual malice.  (Mem. in Opp'n at 9 n.7.)

[3] Because the Court will dismiss Count I on these grounds, the Court need not decide whether Defendant is immune under Virginia's Anti-SLAPP Statute.  (*See* Mem. in Supp. at 8–9.)

honor, and integrity."[4]   (Compl. ¶ 108.)  This claim is often referred to as a "stigma-plus" claim.  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 n.16 (4th Cir. 2006).  Defendant contends that it is not subject to suit under § 1983 because Defendant was not acting under color of state law when drafting its report.  (Mem. in Supp. at 14–16.)  Defendant argues that "[m]erely being hired by the OAG did not automatically transform a private law firm into a state actor under [§] 1983."  (*Id.* at 16.)  Plaintiff asserts Defendant acted under color of state law because the General Assembly expressly delegated the investigation to Defendant.  (Mem. in Opp'n at 24–25.)

To succeed on a § 1983 claim, a plaintiff must prove three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law."  *Herman v. Lackey*, 309 F. App'x 778, 782 (4th Cir. 2009) (quoting *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997)) (internal quotations omitted).  Section 1983's "color of state law" requirement is synonymous with the Fourteenth Amendment's state-action requirement, and, thus, "the analysis for each is identical."  *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal quotations omitted)).  "Both inquiries demand that 'the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'"  *Id.* (quoting *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006)).

---

[4] Plaintiff brings her constitutional claim pursuant to § 1983.  Section 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes."  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

Private action will only be deemed state action when "the state has so dominated such activity as to convert it to state action[.]" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009). This occurs "only when [the state] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citations omitted). "Mere approval of or acquiescence" by the State is insufficient to hold the State responsible. *Id.* at 1004–05 (citations omitted). When a private entity is serving a public function, or, as is the case here, is delegated a public function, the relevant question is "whether the function performed has been traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal quotations and citations omitted) (emphasis in original).

In this case, Defendant is a private law firm hired by the Commonwealth "to conduct an *independent*, third-party investigation" of the OSIG's actions during its investigation of the Board's handling of VLM. (Compl. ¶ 73 (emphasis added).) As part of the investigation, Defendant reviewed thousands of documents and conducted numerous witness interviews. (*See id.* ¶ 79.) Defendant then drafted a report of its findings, and noted that:

> No constraints were placed on our work beyond those imposed by our enabling statute, nor were any efforts made to influence the outcome of our investigation. Communications necessary to request documents or arrange witness interviews aside, other than communications concerning administrative matters and scheduling, no other communications have taken place with any public official, state agency, or third party regarding this investigation. The findings and recommendations set forth in this report are our own.

(Ex. A at 14.)[5]  Independent investigations are considered a normal function of law firms,

and attorneys generally do not "act under color of state law when performing a lawyer's

traditional functions as counsel." *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)

(holding that public defenders do not act under color of state law).  Outside of hiring or

contracting Defendant to perform the investigation, the OAG and legislature exerted no

control over Defendant.  Rather, Defendant conducted its investigation and rendered its

determinations independently—without the encouragement or control of the OAG.  *See*

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019) ("[T]he fact that the

government licenses, contracts with, or grants a monopoly to a private entity does not

convert the private entity into a state actor—unless the private entity is performing a

traditional, exclusive public function.").

　　　Plaintiff cites no authority for the proposition that independent investigations are

an exclusive public function.  State governments routinely hire private law firms to

conduct independent investigations.[6]  The Court finds that Defendant was not a state

---

[5] While a motion to dismiss tests the sufficiency of a complaint, courts may consider documents
that are either "explicitly incorporated into the complaint by reference" or "those attached to the
complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016)
(citations omitted).  A court may consider a document not attached to the complaint, when "the
document [is] integral to the complaint and there is no dispute about the document's
authenticity." *Id.* at 166.  "[I]n the event of conflict between the bare allegations of the
complaint and any exhibit attached . . ., the exhibit prevails." *Id.* (alteration in original) (quoting
*Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) (internal
quotations omitted).  Thus, the Court may consider Defendant's report, attached as Exhibit A to
the Complaint.

[6] Some examples include: New York's state Assembly hired a private law firm to investigate
allegations of sexual harassment against former Governor Cuomo; Washington state hired a
private law firm to conduct an independent investigation into the Washington Attorney General's

actor because it did not perform a function that is an *exclusive* prerogative of the
Commonwealth. *Rendell-Baker*, 457 U.S. at 842; *see Caleb v. Grier*, 598 F. App'x
227, 235–36 (5th Cir. 2015) (affirming the dismissal of a private law firm and its
investigators hired by the superintendent to conduct an internal investigation because
they were not state actors as they did not perform a service traditionally exclusively
reserved to the state); *Hanifee v. Bd. of Educ. of Kent Cnty.*, No. RDB-09-2381, 2010 WL
723772, at *7 (D. Md. Feb. 24, 2010) (finding that the attorneys hired by the school
board to conduct an independent investigation "were not acting 'under color of state law'
merely because they provided legal services to the [School] Board"); *see also Horen v.
Bd. of Educ.*, 594 F.Supp.2d 833, 841 (N.D. Ohio 2009) ("[A]ttorneys do not become
state actors by representing state or local governments."). Accordingly, Defendant is not
subject to suit under § 1983.

---

Office; the Iowa Supreme Court hired a private law firm to conduct an independent investigation
into arrests and an alleged break-in; and the City of Philadelphia retained a private law firm to
independently investigate the City's possession of human remains from the 1985 MOVE
bombing. *See* Marina Villeneuve and Tom Hays, *New York Assembly hires top law firm for
Cuomo investigation*, AP NEWS (Mar. 17, 2021, 4:40 PM), https://apnews.com/article/new-york-
andrew-cuomo-judiciary-impeachments-us-news-dbaab6179b00eee52cd5238debd67287;
Suzette Parmley, *State High Court Ruling Gives Law Firms Hired by Government Agencies
Immunity*, LAW.COM (Feb. 3, 2021, 11:20 AM), https://www.law.com/2021/02/03/state-high-
court-ruling-gives-law-firms-hired-by-government-agencies-immunity/; *Iowa Supreme Court
hires law firm for independent investigation*, IOWA JUDICIAL BRANCH (Sept. 20, 2019),
https://www.iowacourts.gov/announcements/iowa-supreme-court-hires-law-firm-for-
independent-investigation/; Keir Bradford-Grey, *Montgomery McCracken Completes
Investigation into City of Philadelphia's History and Handling of Move Victims' Remains*,
MONTGOMERY MCCRACKEN WALKER & RHOADS LLP (June 16, 2022),
https://www.mmwr.com/montgomery-mccracken-completes-investigation-into-city-of-
philadelphias-history-and-handling-of-move-victims-remains/.

## 2. Even if Defendant was a state actor, it is entitled to qualified immunity, and Count II fails to state a claim.

Defendant asserts that it is protected by qualified immunity. (Mem. in Supp. at 16.) Defendant notes that "[t]his Court has already determined that Moschetti failed to adequately allege a 'stigma-plus' due process violation, and therefore failed to allege a constitutional violation, against officials in OSIG." (*Id.* (citing *Moschetti v. Off. of the Inspector Gen.*, No. 3:22-cv-24–HEH, 2022 WL 3329926, at *5–6 (E.D. Va. Aug. 11, 2022)).) Additionally, Defendant contends that Plaintiff's due process claim is far too attenuated. (*Id.*) Plaintiff argues that a determination of qualified immunity is premature at this stage and asserts that Defendant is not protected by qualified immunity. (Mem. in Opp'n at 25–26.)

Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021). The doctrine of qualified immunity provides "'government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 429 (4th Cir. 2020) (quoting *Stanton v. Sims*, 571 U.S. 3, 5 (2013)). "The burden of establishing a qualified immunity defense rests on the official asserting the defense." *Wingate*, 987 F.3d at 311.

The qualified immunity doctrine involves two (2) steps. *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018). State actors are protected by

qualified immunity "unless (1) [the state actor] violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). At the motion to dismiss stage, the first step mirrors the test under Rule 12(b)(6). *See Ray*, 948 F.3d at 227–228 (applying the Rule 12(b)(6) standard of review as a part of qualified immunity). However, it is within the Court's discretion to determine which prong of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

To state a stigma-plus claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege that the defendant's statements "(1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). Even if those elements are shown, a plaintiff must further demonstrate that the defendant did not provide due process related to the public statements. *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 501 (4th Cir. 2018).

The Supreme Court has warned against courts allowing a plaintiff to turn "the Due Process Clause into 'a font of tort law' by permitting plaintiffs to constitutionalize state

19

tort claims through artful pleading." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314

(4th Cir. 2012) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Defamation is not a

constitutional deprivation. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). To create a

protected liberty interest, a statement must be so stigmatizing that it "implies 'the

existence of serious character defects such as dishonesty or immorality.'" *Ridpath*, 447

F.3d at 308 (quoting *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982)). To

assert a liberty interest based on damage to a plaintiff's good name, reputation, or

integrity, the plaintiff must show more than a reputational injury. *Shirvinski*, 673 F.3d

at 314–15. Rather, the plaintiff must allege that her reputational injury was accompanied

by a state action that "'distinctly altered or extinguished' [her] legal status." *Id.* at 315

(quoting *Paul*, 424 U.S. at 712).

Defendant asserts that Moschetti has failed to plausibly allege the first and third

elements of a stigma-plus due process claim: that its report stigmatized her or that the

report was made in conjunction with Moschetti's termination. (*See* Mem. in Supp. at 16–

19.) Here, Defendant conducted an investigation and issued its report which included the

following statements regarding Moschetti:

> [W]e find it most likely that OSIG's lead investigator was impaired by
> personal bias and that this bias likely had an impact on the tone and substance
> of the OSIG Parole Board Report. Internal communications, the manner in
> which the investigation was conducted, the content of witness interviews,
> and the tone of the report, all indicate a high likelihood that the lead
> investigator was motivated to see Mr. Martin returned to prison and such
> motivation likely impacted the investigation and report.
>
> . . .

OSIG failed to identify apparent bias in the lead investigator. It is most likely that the objectivity of OSIG Senior Hotline Investigator Jennifer Moschetti [] in the VPB Martin matter was impaired by bias and that this bias likely had an impact on the OSIG Parole Board Report. Early email communications from [] Moschetti indicate a high probability of bias against Mr. Martin being granted parole. Evidence of bias first appeared in [Moschetti's] response to the Investigations Manager's initial conclusion that the VPB Martin matter should not be investigated.

. . .

[T]he tone of the OSIG Parole Board Report indicates bias and a certain disdain for the fact that Mr. Martin had been granted parole, based on the nature of his conviction.

. . .

The most troubling aspect of our review was OSIG's failure to identify apparent bias in the lead investigator, which likely impacted OSIG's investigation and report. The early indicators of bias should have been recognized and immediately addressed. We will likely never know the extent, to which, the lead investigator's likely bias impacted the OSIG Parole Board Report.

(Ex. A at 3, 17–18, 65.) Moschetti asserts that Defendant's accusations of bias, disdain, and motivation to see Martin returned to prison were false. (Compl. ¶¶ 77–78.) She contends that Defendant's statements resulted in "the loss of occupational opportunities and the compensation and benefits associated therewith[,] . . . personal injury, reputational harm, anxiety, emotional distress, personal humiliations and embarrassment." (*Id.* ¶ 112.)

Under this standard, Plaintiff has failed to sufficiently plead a stigma-plus due process violation. Defendant's report merely states that Moschetti was biased which likely impacted her investigation—it does not comment on her character, morals, or the

merits of the OSIG's decision to terminate Moschetti. *See Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (holding that mere allegations of incompetence or unsatisfactory job performance are insufficient to implicate a constitutionally protected liberty interest). This does not rise to the level of stigmatizing to sustain a stigma-plus due process claim, and, therefore, Count II fails under the first element of the stigma-plus test.

Additionally, the Fourth Circuit has made clear that even if statements "undoubtedly . . . impair [a plaintiff's] future employment prospects, that fact alone does not amount to a *constitutional* injury. *Shirvinski*, 673 F.3d at 315 (quotations and citations omitted) (emphasis in original). Under the stigma-plus test, "no deprivation of liberty occurs when, in the course of defaming a person, a public official solely impairs the person's *future* employment opportunities, without subjecting [her] to a *present* injury such as termination of government employment." *Ridpath*, 447 F.3d at 309 n.16. Here, Defendant began its investigation on or about April 24, 2021, and issued its report on June 14, 2021. (Ex. A at 1, 12; Compl. ¶ 75.) Moschetti was terminated by the OSIG on March 22, 2021. (Compl. ¶¶ 14, 59.) Thus, Defendant's investigation and report occurred *after* Moschetti's termination, and Moschetti has failed to plead the third prong of her Due Process claim.

Finally, even if Plaintiff could satisfy all four (4) elements of the stigma-plus test, she has failed to allege that she was deprived of her liberty interest without due process of law under the Fourteenth Amendment. During its investigation, Defendant repeatedly requested to interview Moschetti, but she declined. (Ex. A at 28.) Thus, Defendant

22

provided numerous opportunities for a name-clearing hearing,[7] and Moschetti chose not to participate. Plaintiff claims that because Defendant's "negative public comments irreparably poisoned public perception about Moschetti . . . any type of name-clearing hearing or post-deprivation remedy would have been futile or worthless." (Compl. ¶ 114.) Beyond this statement, Plaintiff offers no factual support or explanation for why due process would have been "futile or worthless" in this case. Thus, Plaintiff has failed to adequately assert a violation of her due process rights.

Accordingly, Plaintiff fails to state a claim for a stigma-plus due process violation, and Count II must be dismissed under the qualified immunity doctrine and Rule 12(b)(6). Because Plaintiff has failed to allege a violation of a federal statutory or constitutional right under the first prong of qualified immunity, the Court need not reach whether the alleged constitutional violation was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Thus, the Court will dismiss Count II because (1) Defendant is not a state actor, and, therefore, is not subject to suit under § 1983; (2) even if Defendant were a state actor, it is protected by qualified immunity as Plaintiff did not adequately plead a constitutional violation; and (3) Count II fails to state a claim under Rule 12(b)(6).

---

[7] A formal government proceeding is not required; rather, only a name-clearing hearing is necessary. *See Harrell v. City of Gastonia*, 392 F. App'x 197, 204 (4th Cir. 2010) (finding that a hearing held before the city manager constituted a name-clearing hearing because the plaintiff had the opportunity to present "his side of the story").

### C. Count III – First Amendment Retaliation under 42 U.S.C. § 1983

#### 1. Defendant is not subject to suit under § 1983, and, even if Defendant was a state actor, it is entitled to qualified immunity.

As previously stated, Defendant is not subject to suit under § 1983 because it is not a state actor. *See supra* Section III.B.1. Moreover, even if Defendant was a state actor for purposes of § 1983, Defendant is entitled to qualified immunity because Defendant did not violate Plaintiff's constitutional right. *See supra* Section III.B.2; *infra* Section III.C.2. Accordingly, Count III fails.

#### 2. Count III fails to state a claim upon which relief may be granted.

Defendant argues that Count III must be dismissed under Rule 12(b)(6) because Moschetti failed to sufficiently allege a causal relationship between her protected speech and Defendant's alleged retaliation. (Mem. in Supp. at 24–26.) Plaintiff argues that "a direct connection, both temporally and contextually, exists between Moschetti's free speech activities and [Defendant's] [r]eport." (Mem. in Opp'n at 29 (citing Compl. ¶¶ 68–73, 81–85).)

To state a viable First Amendment retaliation claim, a plaintiff must establish three (3) elements: "(1) [the] speech was protected, (2) the alleged retaliatory action adversely affected [the] protected speech, and (3) a causal relationship [existed] between the protected speech and the retaliation." *McClure v. Ports*, 914 F.3d 866, 871 (4th Cir. 2019) (quoting *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015)) (internal quotations omitted) (alterations in original).

The causal relationship requirement is rigorous. *Porter v. Bd. of Trustees of N.C.*

24

*State Univ.*, 72 F.4th 573, 583 (4th Cir. 2023) (citations omitted).  To prove causation, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (emphasis in original).  "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Knowledge alone is insufficient to establish a causal connection.  *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (citation omitted).  "There must also be some degree of temporal proximity to suggest a causal connection." *Id.*

Plaintiff asserts that Defendant retaliated against her because she disclosed materials to the General Assembly and filed a petition in the Circuit Court.  (Compl. ¶¶ 116, 118.)  However, the Complaint lacks any factual allegation that Defendant acted with a retaliatory motive.  Plaintiff's disclosure of the materials and whistleblower petition were entirely unrelated to Defendant.  Moschetti disclosed the materials on or about March 3, 2021, and filed her petition on March 8, 2021.  (*Id.* ¶¶ 55, 58.)  The OSIG terminated Moschetti on March 22, 2021.  (*Id.* ¶¶ 14, 59.)  During this time, Defendant was not involved in Moschetti's investigation or petition, and the OAG did not hire Defendant until April 24, 2021.  (Ex. A at 12.)  Defendant did not issue its report until June 14, 2021—over three (3) months after Plaintiff engaged in her alleged protected activities.  (*Id.* at 1.)  Thus, not only did Plaintiff fail to plausibly allege that Defendant

had a retaliatory motive, but she also failed to show temporal proximity to suggest a causal connection. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding that "temporal proximity must be very close" and citing multiple Circuit Court cases holding that a three-month or four-month period is insufficient (internal quotations omitted)).

Moreover, Plaintiff has not sufficiently alleged that Defendant caused her injury. Moschetti lists the same injuries that she alleged in her due process claim: "the loss of work, income, and the benefits and compensation associated therewith[,] . . . personal injury, anxiety, emotional distress, personal and professional humiliation and embarrassment." (Compl. ¶ 120.) The Complaint does not provide any factual evidence of Moschetti's alleged injuries nor does it offer factual support for causation. Rather, the Complaint merely contains conclusory statements that Defendant retaliated against her. (*See* Compl. ¶¶ 118–19, 121.)

Accordingly, Count III will be dismissed because (1) Defendant is not a state actor, and, therefore, is not subject to suit under § 1983; (2) even if Defendant were a state actor, it is protected by qualified immunity as Plaintiff did not adequately plead a constitutional violation; and (3) Count III fails to state a claim under Rule 12(b)(6).

**D.  Count IV – Conspiracy under 42 U.S.C. § 1983 and Common Law Conspiracy under Virginia Law**

**1.  Defendant is not subject to suit under § 1983, and, even if Defendant was a state actor, it is entitled to qualified immunity.**

As previously explained, Defendant is not subject to suit under § 1983 because it

is not a state actor. *See supra* Section III.B.1. Moreover, even if Defendant was a state actor for purposes of § 1983, Defendant is entitled to qualified immunity because Defendant did not violate a federal statutory or constitutional right. *See supra* Section III.B.2; *infra* Section III.D.2. Thus, Plaintiff's conspiracy claim under § 1983 fails.

### 2. Count IV fails to state a claim for conspiracy under § 1983 and common law conspiracy.

Plaintiff asserts that Defendant, the former Governor's Chief of Staff, Mercer, persons in former Governor Northam's Office, and other Democratic leaders and legislators conspired "to design a so-called independent investigation" that focused only on Moschetti's investigation of the VLM matter "and provide[d] political cover for the Parole Board and the Governor in an election year." (Compl. ¶ 125.) Moschetti contends the investigation was also designed to punish her for disclosing materials to the General Assembly and filing her petition in the Circuit Court. (*Id.*) Defendant moves to dismiss Count IV under Rule 12(b)(6) because Plaintiff alleged neither the members involved in the conspiracy nor a conspiratorial objective. (Mem. in Supp. at 26–29.) Plaintiff argues the Complaint plausibly alleges her conspiracy claims. (Mem. in Opp'n at 29–30.)

### a. Conspiracy under § 1983

To state a claim for conspiracy under § 1983, a plaintiff "must present evidence that [(1)] the [defendants] acted jointly in concert and [(2)] that some overt act was done [(3)] in furtherance of the conspiracy [(4)] which resulted in [the plaintiffs'] deprivation of a constitutional right . . . ." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.

27

1996) (citation omitted).  "While [the plaintiff] need not produce direct evidence of a meeting of the minds, [she] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* The Complaint must "reasonably lead to the inference that [the defendant] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*; *see Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996) ("The plaintiff must allege facts which show that the defendants shared a 'unity of purpose or common design' to injury the plaintiff. . . . The mere fact that each of [the] actors played a part in the events is not sufficient to show such a unity of purpose." (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946))).  Parallel conduct alone does not suggest conspiracy and "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)) (internal quotations omitted).  The plaintiff bears "a weighty burden to establish a civil rights conspiracy." *Hinkle*, 81 F.3d at 421.

The Court has already established that Plaintiff was not deprived of a constitutional right in this case. *See supra* Sections III.B.2, III.C.1, III.D.1.  Thus, Plaintiff's conspiracy claim under § 1983 fails.  Plaintiff's conspiracy claim under § 1983 also fails because she has not plausibly alleged the members of the conspiracy or a conspiratorial objective.  Moschetti asserts that Defendant, Mercer, "persons in former Governor Ralph Northam's Office and other Democratic leaders, including Democratic

legislators," conspired against her. (Compl. ¶ 125.) While Defendant and Mercer are named, there are numerous unnamed alleged conspirators. Additionally, Plaintiff did not specify any communications amongst the conspirators—there are no assertions that Defendant spoke with the other conspirators in the Complaint. Plaintiff merely states that the conspirators "conspired and/or acted in concert in order to design a so-called independent investigation. . . ," and "[Defendant] acted in furtherance of this conspiracy. . . ." (*Id.* ¶¶ 125–26.) The Complaint does not plausibly assert a "meeting of the minds," and includes only bare legal conclusions of a conspiracy.

Moreover, the Complaint lacks any factual support that the conspirators shared a "unity of purpose or common design." *Am. Tobacco Co.*, 328 U.S. at 810. Plaintiff only references, at best, parallel conduct by stating that Mercer spoke publicly about Moschetti and reviewed the bill, H.B. 1800, and Defendant intentionally skewed its investigation. (Compl. ¶ 125.) Nowhere in the Complaint does Plaintiff assert Mercer and Defendant met or discussed the investigation or report, nor does she contend the unnamed conspirators met or held discussions with Defendant to form any conspiratorial objective. Thus, Plaintiff's § 1983 conspiracy claim under must be dismissed. *See Soc'y Without a Name*, 655 F.3d at 347 (finding that plaintiff's allegations were insufficient to support a meeting of the minds because the plaintiff "fail[ed] to allege with any specificity the persons who agreed to alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"); *Marshall v. Marshall*, 523 F. Supp. 3d 802, 829 (E.D. Va. 2021) ("[C]onclusory allegations of a

29

conspiracy will not suffice.").

### b. Common law conspiracy

In Virginia, "the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to [the] plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citation omitted). The plaintiff must show that the conspirators "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotations and citation omitted). "[M]ere conclusory language" is insufficient to state a claim for common law conspiracy. *Marshall*, 523 F. Supp. 3d at 838 (internal quotations and citation omitted).

Like Plaintiff's § 1983 conspiracy claim, Plaintiff's common law conspiracy claim fails because the Complaint lacks factual allegations of an agreement between the conspirators. Nowhere in the Complaint does Moschetti allege that Defendant, Mercer, and the unnamed conspirators formed an agreement to retaliate against her or deprive her of her constitutional rights. Rather, as explained previously, Plaintiff's conspiracy claim is littered with conclusory language, which is insufficient to survive Defendant's Motion. *See supra* Section III.D.2.a. Accordingly, Plaintiff's common law conspiracy claim must be dismissed because she fails to plead that there was an agreement amongst the alleged conspirators. *See Firestone*, 485 F. Supp. 2d at 704 ("Virginia requires a plaintiff to

allege some details of time and place and the alleged effect of the conspiracy.") (internal quotations and citation omitted).

Additionally, under Virginia law, "a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007); *see Firestone*, 485 F. Supp. 2d at 703 ("[W]here there is no actionable claim for the underlying alleged wrong, [the] plaintiff cannot maintain a claim for civil conspiracy."). Because the Court dismisses Plaintiff's defamation claim[8] and there is no independent cause of action for civil conspiracy in Virginia, Plaintiff's common law conspiracy claim must be dismissed.

The Court will dismiss Count IV because (1) Defendant is not a state actor, and, therefore, is not subject to suit under § 1983; (2) even if Defendant were a state actor, it is protected by qualified immunity as Plaintiff did not adequately plead a federal statutory or constitutional violation; (3) Plaintiff's conspiracy claims fail under Rule 12(b)(6); and (4) Plaintiff's common law conspiracy claim fails because there is no actionable underlying tort.

---

[8] Plaintiff's defamation claim is the only alleged tort in this case. (*See* Compl. ¶¶ 96–129.)

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss and

Plaintiff's Complaint will be dismissed with prejudice.  An appropriate Order will

accompany this Memorandum Opinion.

Henry E. Hudson
Senior United States District Judge

Date: May 29, 2024
Richmond, Virginia

32